FILED

1   MICHELLE UZETA (State Bar No. 164402)
2   ANNETTE MORASCH (State Bar No. 263797)
    amorasch@hrc-la.org
3   Southern California
       Housing Rights Center, Inc.
4   520 S. Virgil Ave., Suite 400
5   Los Angeles, CA 90020
    TEL: (213) 387-8400 ex. 29
6   FAX: (213) 381-8555
7   Attorney for Plaintiffs

2010 JUN -9  PM 3: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

8
9              UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA

10
11  HO JIN "STEVEN" LEE, an individual;)   Case No:  CV10-4262 PSG PJWx
    EUNRAN "REBEKAH" SEO, an           )
12  individual; and SOUTHERN           )
    CALIFORNIA HOUSING RIGHTS          )   COMPLAINT FOR COMPENSATORY
13  CENTER, d/b/a HOUSING RIGHTS       )   DAMAGES, PUNITIVE DAMAGES,
    CENTER, a California nonprofit     )   AND INJUNCTIVE RELIEF FOR
14  corporation,                       )   VIOLATION OF 42 U.S.C. §§ 3601-
                                       )   3619; CAL GOV'T CODE §51 et seq;
15           Plaintiffs,               )   CAL GOV'T CODE §12955, et seq;
                                       )   CAL BUS & PROF. CODE §17200, et
16       vs.                           )   seq; and NEGLIGENCE
                                       )
17  CORONA LIVING TRUST;               )
18  SONLIGHT MANAGEMENT, INC., a       )
    California Corporation; LISA       )
19  APARTMENTS, an unincorporated      )
    California association; LA CORONA  )
20  TORRANCE APARTMENTS, an            )
    unincorporated California association )
21  d/b/a LA CORONA DEL NORTE          )
22  APARTMENTS d/b/a CORONA DEL        )
    NORTE APARTMENTS d/b/a LA          )
23  CORONA DEL NORTE; BONNIE L.        )
    CORONA, individually and as a owner )
24  of Sonlight Management, Inc., as a  )
25  trustee of Corona Living Trust, as an )
    owner/partner of Lisa Apartments and )
26  as owner/partner of La Corona       )
    Torrance Apartments; ARTHUR        )
27  CORONA individually and as a trustee )
28  of Corona Living Trust; STEVE A.   )

COMPLAINT
1

1   CORONA, individually and as a
2   president of Sonlight Management, Inc., )
    as owner/partner of La Corona            )
3   Torrance Apartments and as               )
    owner/partner of Lisa Apartments;        )
4   ALLAN ERNST, individually and as         )
    managing agent of Sonlight               )
5   Management, Inc.; BRIAN                   )
    BUENAVENTURA, individually and as        )
6   managing agent of Lisa Apartments;       )
7   and DOES I – X, inclusive.               )

8                  **Defendants**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. INTRODUCTION

1. This is an action for declaratory and injunctive relief and damages against the Corona Living Trust, Sonlight Management, Inc., Lisa Apartments, La Corona Torrance Apartments, an unincorporated California association d/b/a La Corona Del Norte Apartments d/b/a Corona Del Norte Apartments d/b/a La Corona Del Norte, Bonnie L. Corona, Arthur Corona, Steve A. Corona, Allan Ernst, Brian Buenaventura and Does I-X (collectively "Defendants"), for discrimination in the rental of housing based on familial status. Defendants have engaged in a pattern or practice of conduct with the purpose and the effect of discriminating against families with minor children by among other things: refusing to rent to individuals with children; imposing unreasonably restrictive rules, terms and conditions on the tenancies of individuals with children; making written and oral statements of preference disfavoring individuals with children; making false representations about the availability of dwellings to individuals with children; inquiring about the familial status of prospective tenants and utilizing unreasonably restrictive occupancy limits which have a disproportionate adverse effect on families with children. This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et seq,* and related state laws.

## II. JURISDICTION AND VENUE

1. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States, specifically the federal Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA"). The state law claims form the same case and controversy as the federal law claims. Thus, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims.

2. All defendants reside in this district and all events giving rise to this complaint occurred in this district. Thus venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(2).

1    3.    This Court has authority to grant declaratory and injunctive relief as well as

2    actual and punitive damages pursuant to 42 U.S.C. § 3612(o)(3), and 42 U.S.C. §

3    3613(c)(1).  The Court also has the authority to award Plaintiffs their reasonable

4    attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2).

### III.    PARTIES

6    1.    At all times mentioned and relevant herein, Plaintiff Ho Jin "Steven" Lee ("Mr.

7    Lee") was and is a resident of the County of Los Angeles.  Mr. Lee was a tenant of a one-

8    bedroom apartment owned by Defendant Bonnie L. Corona and managed by Defendant

9    Sonlight Management, Inc. and Defendant La Corona Torrance Apartments, located at

10   21240 S. Western Avenue, Torrance, California from November 2007 to December

11   2009.

12   2.    At all times mentioned and relevant herein, Plaintiff Eunran "Rebekah" Seo ("Mrs.

13   Seo") was and is a resident of the County of Los Angeles.  Mrs. Seo was a tenant of a

14   one-bedroom apartment owned by Defendant Bonnie L. Corona and managed by

15   Defendant Sonlight Management, Inc. and Defendant La Corona Torrance Apartments,

16   located at 21240 S. Western Avenue, Torrance, California from February 2008 to

17   December 2009.

18   3.    Plaintiff Southern California Housing Rights Center ("HRC") is a non-profit

19   corporation organized under the laws of the State of California with its principal place of

20   business at 520 S. Virgil Ave., Los Angeles, California.  HRC's mission is to actively

21   support and promote fair housing through education and advocacy in order that all

22   persons have the opportunity to secure the housing they desire and can afford, without

23   being discriminated against based on their race, color, religion, gender, sexual

24   orientation, national origin, familial status, marital status, disability, ancestry, age, source

25   of income or other characteristics protected by law.  HRC engages in activities to identify

26   barriers to fair housing in the County of Los Angeles and Ventura County and to

27   counteract and eliminate discriminatory housing practices.  HRC activities include, but

1  are not limited to: (1) outreach and education to the community regarding fair housing;

2  (2) investigating allegations of discrimination; (3) conducting tests of housing facilities to

3  determine whether freedom of residence and equal opportunity are provided; (4) taking

4  other necessary steps to assure equal opportunity in order to counteract and eliminate

5  discriminatory housing practices.

6      4.  In support of its goals, HRC engages in a variety of educational, counseling and

7  referral services throughout Los Angeles and Ventura Counties, including Torrance, as

8  well as conducting tests for housing discrimination throughout the area.  HRC staff has

9  spoken at various forums sponsored by government agencies and real estate industry

10  groups.  These activities provide guidance and information to individuals throughout

11  HRC's service area who are seeking and providing housing.

12      5.  The public outreach activities in which HRC engages have generated numerous

13  phone calls from individuals who have a variety of needs in seeking access to housing.

14  HRC counsels these individuals on the options available to them to obtain access to

15  integrated housing and/or refers the callers to appropriate government and community

16  agencies for assistance.

17      6.  Upon information and belief, at all times mentioned and relevant herein, Defendant

18  Corona Living Trust, with its primary place of business located in Harbor City,

19  California, was and is the owner and/or manager of residential rental apartment

20  complexes located at 1636 Lomita Boulevard, in the County of Los Angeles, ("1636

21  Lomita") and 1356 Lomita Boulevard, in the County of Los Angeles, ("1356 Lomita").

22      7.  Upon information and belief, at all times mentioned and relevant herein, Defendant

23  Sonlight Management, Inc., ("Sonlight") a California Corporation with its primary place

24  of business located in Harbor City, California, was and is the owner and/or manager of

25  1356 Lomita as well as the owner and/or manager of a residential rental apartment

26  complex located at 21240 South Western Avenue in the County of Los Angeles ( "21240

27  Western").

28

8.  Upon information and belief, at all times mentioned and relevant herein, Defendant, Lisa Apartments, an unincorporated association with its primary place of business located in Harbor City, California, was and is the owner and/or manager of 1356 Lomita.

9.  Upon information and belief, at all times mentioned and relevant herein, Defendant, La Corona Torrance Apartments, an unincorporated California association d/b/a La Corona Del Norte Apartments d/b/a Corona Del Norte Apartments d/b/a La Corona Del Norte ("La Corona") with its primary place of business located in Torrance, California, was and is the owner and/or manager of 21240 Western and also was and is the owner/and or manager of a residential rental apartment complex located at 21910 South Western Avenue in the County of Los Angeles ("21910 Western").

10. The residential rental apartment complexes located at 1356 Lomita,1636 Lomita 21240 Western, and 21910 Western, ( which shall collectively be referred to as "Subject Properties") are dwellings within the meaning of 42 U.S.C. § 3602(b).

11.  Upon information and belief, at all times mentioned and relevant herein, Defendant Bonnie L. Corona ("Ms. Corona") was and is an owner, partner and/or agent of Sonlight.  Ms. Corona is also the trustee of Defendant Corona Living Trust.  Ms. Corona is also the owner, partner and/or agent of Lisa Apartments and as an individual, owns both the 21240 Western and 21910 Western properties.  In these capacities, Ms. Corona was and is responsible for approving potential tenants and terminating the leases of in-place tenants through policies, practices and processes adopted and implemented directly by her and/or her partners, agents or employees at all of the Subject Properties. At all times mentioned and relevant herein, Ms. Corona was and is a resident of the County of Los Angeles.

12.  Upon information and belief, at all times mentioned and relevant herein, Defendant Steve A. Corona  ("Steve Corona") was and is an owner, president, partner and/or agent of Sonlight.  Steve Corona is also an owner, president, partner and/or agent

of Defendant Lisa Apartments and La Corona.  In these capacities, Steve Corona was and is responsible for approving potential tenants and terminating the leases of in-place tenants through policies, practices and processes adopted and implemented directly by him and/or his partners, agents or employees at all of the Subject Properties.  At all times mentioned and relevant herein, Steve Corona was and is a resident of the County of Los Angeles.

13.  Upon information and belief, at all times mentioned and relevant herein, Defendant Arthur Corona ("Arthur Corona") was and is a trustee of Defendant Corona Living Trust.  In this capacity, Arthur Corona was and is responsible for approving potential tenants and terminating the leases of in-place tenants through polices, practices and processes adopted and implemented directly by him and/or his partners, agents or employees at 1356 Lomita and 1636 Lomita.  At all times mentioned and relevant herein, Arthur Corona was and is a resident of the County of Los Angeles.

14.  Upon information and belief, at all times mentioned and relevant herein, Defendant Allan Ernst ("Mr. Ernst") was and is the onsite property manager of 21240 Western and an employee and agent of Sonlight and La Corona.  Mr. Ernst is an "owner" within the meaning of Cal. Gov't Code §§ 12927(e) and 12955(a) and a "person" subject to the anti-discrimination provisions of 42 U.S.C. § 3602(d).  At all times mentioned and relevant herein, Mr. Ernst was and is a resident of the County of Los Angeles.

15.  Upon information and belief, at all times mentioned and relevant herein, Defendant Brian Buenaventura ("Mr. Buenaventura") was and is the onsite property manager of 1356 Lomita and an employee and agent of  Lisa Apartments.  Mr. Buenaventura is an "owner" within the meaning of Cal. Gov't Code §§ 12927(e) and 12955(a) and a "person" subject to the anti-discrimination provisions of 42 U.S.C. § 3602(d).  At all times mentioned and relevant herein, Mr. Buenaventura was and is a resident of the County of Los Angeles.

16.  Plaintiffs are informed and believe that each Defendant was the agent, employee, partner, co-conspirator, or other authorized representative of the other, and in committing the acts and omissions alleged hereinafter, were acting within the scope of their agency, employment, partnership, conspiracy, or other authorized representation.  Whenever and wherever reference is made in this Complaint to any acts of Defendants, such allegations and reference shall also be deemed to mean the acts of each Defendant acting individually, jointly or severally.

## IV.   FACTUAL ALLEGATIONS

### A. Introduction

17.  Defendants, acting individually or in concert, directly or through agents, have engaged in a pattern or practice of discrimination against families with children in the operation of their residential rental properties, including the Subject Properties. Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

18.  Defendants' unlawful conduct includes, but is not limited to, commission of the following discriminatory housing practices:

    a.  Willfully and knowingly discriminating against individuals on the basis of familial status through refusing to rent to individuals with children;

    b.  Otherwise making accommodations unavailable to individuals with children;

    c.  Denying persons equal accommodations, and terms and conditions of tenancy because of familial status;

    d.  Making written and oral statements of preference, limitation, or discrimination with respect to the rental and use and enjoyment of housing accommodations;

    e.  Making false representations about the availability of dwellings;

    f.  Inquiring about the familial status of persons seeking to rent housing accommodations; and

1        g. Instituting an overly restrictive occupancy policy which has a negative

2             adverse impact on families with children.

3       **B.**    **The Tenancy of Plaintiffs Steven Lee and Rebekah Seo**

4      19. On or about November 2007, Mr. Lee moved into a one-bedroom apartment, unit

5   number 25, at 21240 Western.

6      20. Upon move in, Defendants provided Mr. Lee with several handouts. The first

7   handout was signed by "Manager, Allan Ernst" and stated: "IMPORTANT

8   INFORMATION FOR ALL NEW TENANTS!!!!! …When having friends and family

9   members helping to move you, please be quiet, no children under 10. Please consider the

10   people that already live here, they do not wish to hear you. Thank you very much for

11   choosing Corona Del Norte Apartments." (Attached hereto as Exhibit A.)

12      21. The second document provided by Defendants was a copy of the "HOUSE

13   RULES." This document included the following language: "OCCUPANTS: are

14   restricted to those signed on the rental agreement, ONLY…No minor children are

15   allowed outside the apartment unless they are accompanied by adult tenant. No skate,

16   skateboards, tricycles, bicycles, or wheels [sic] goods of any kink [sic] are permitted on

17   the decks, stairs, balconies, walkways or parking areas. Toys or wheels [sic] goods must

18   be kept inside your apartment and carried outside the complex before use…Thank you,

19   Sonlight Management[.]" (Attached hereto as Exhibit B.)

20      22. The third document provided by Defendants was a copy of the "RESIDENTIAL

21   RENTAL AGREEMENT & VERIFICATION OF SECURITY DEPOSIT" which was

22   signed by Mr. Ernst and included the following language, in that it has a disparate impact

23   on families with children: "Regular Occupants of the premises shall be restricted to those

24   parties who have signed this agreement…The number of occupants for this apartment

25   will be limited to: TWO persons. (2)….OWNER OF THE BUILDING IN THIS

26   AGREEMENT IS BONNIE L. CORONA…" (Attached hereto as Exhibit C.)

27      23. A few months after moving in, Mr. Lee married Mrs. Seo and Mrs. Seo moved

28   into 21240 Western unit 25 with her new husband on or about February 2008.

24. On or about May 6, 2008, Mr. Lee informed Mr. Ernst that Mrs. Seo was pregnant and expecting a child. Mr. Ernst told Mr. Lee "the city law says only two people can live in your one bedroom apartment. But because you are such a good tenant, I will let you stay," or words to that effect.

25. On or around September 15, 2009, Mr. Ernst approached Mr. Lee and told him "I have been getting complaints about your baby. Three tenants have complained about the baby crying," or words to that effect. Mr. Lee disagreed, telling Mr. Ernst that he had a good relationship with his neighbors, that his young baby only cried when she was hungry or not feeling well, and that the baby slept well through the night. Mr. Ernst told Mr. Lee that if he received anymore complaints about the baby, he would serve Mr. Lee with a 30 day eviction notice. Mr. Lee asked Mr. Ernst what he should do about his baby. Mr. Ernst told Mr. Lee to keep his windows shut in order for the baby's cries not to escape the unit.

26. Pursuant to Mr. Ernst's threat of eviction, Mr. Lee and Mrs. Seo kept the windows of their non-air-conditioned unit shut during the remainder of their tenancy, even during hot weather. Mr. Lee and Mrs. Seo would also hurry their baby to a back room whenever the baby would start to fuss, in order to hide the sounds of her cries from Mr. Ernst.

### C. The Housing Rights Center's Investigation

27. On or around September 15, 2009, Mr. Lee contacted HRC regarding the threat of eviction he received from Mr. Ernst. HRC conducted an investigation into the Subject Properties. HRC utilized vacancy checks, telephone tests and on-site tests.

*Vacancy Checks*

28. Prior to conducting on-site tests, HRC conducts vacancy checks to confirm the existence of a vacancy. HRC conducted eleven vacancy tests at the Subject Properties.

29. In two of the four vacancy checks done on 21240 Western, Defendants inquired into the familial status of the caller.

30. In two of the three vacancy checks done on 1636 Lomita, Defendants made statements which unreasonably limited occupancy of an available one-bedroom unit to two people, thereby adversely impacting families with children.

31. Two vacancy checks were performed on 1356 Lomita. In both vacancy checks, Defendants made statements which unreasonably limited occupancy of an available studio apartment to only one person, thereby adversely impacting families with children.

32. In the vacancy check done on 21910 Western, Defendants inquired into the familial status of HRC's caller and made comments about the property which can be interpreted as dis-preferring families with children.

33. During a September 21, 2009 vacancy check, at the 21240 Western property, HRC staff spoke with an individual named "Allan" who identified himself as the property manager of 21240 Western. Upon information and belief, "Allan" is Mr. Ernst. HRC's caller asked whether there were any available units at the 21240 Western property. Allan stated that a one-bedroom unit would be available then asked, "Do you have any children involved?" Allan followed that statement by saying, "Sometimes people will say it's only them living there but then they have children show up. You know, like do you have any shared custody, visitation arrangements?" Allan also stated "We don't rent to people with children for upstairs units the noise, well it's unsafe regarding the stairs, we've had problems in the past."

34. During a December 16, 2009 vacancy check at the 1636 Lomita property, HRC staff spoke with a woman identifying herself as "Theresa." Upon information and belief, "Theresa" is an employee and agent of Sonlight, and shall be referred to as Doe I. When asked if there were any vacancies, Doe I stated that a one bedroom unit was available, and the unit was limited to two people.

35. During a January 13, 2010 vacancy check at the 21240 Western property, HRC staff again spoke to a man who identified himself as "Allan." Upon information and belief "Allan" is Mr. Ernst. When asked if there were any one-bedroom availabilities, before answering the question, Allan asked "It's just for yourself, right?"

1  36. During a February 16, 2010 vacancy check at the 1636 Lomita property, HRC

2  staff spoke to a man who identified himself as "Peter." Upon information and belief,

3  "Peter" is an employee and agent of Sonlight, and shall be referred to as Doe II. Doe II

4  stated that there was a one bedroom for rent, and noted it was "only for two people

5  though."

6  37. During an April 17, 2010 vacancy check at the 1356 Lomita property, HRC staff

7  visited the property, and spoke over an intercom to a man who identified himself as

8  "Brian." Upon information and belief, "Brian" is an employee and agent of Defendant

9  Lisa Apartments and is Defendant Brian Buenaventura. Brian stated he had a single

10  available, but "they only want one person in the unit."

11  38. During an April 27, 2010 vacancy check at the 1356 Lomita property, HRC staff

12  spoke to a man who identified himself as "Brian." Upon information and belief, "Brian"

13  is an employee and agent of Defendant Lisa Apartments and is Defendant Brian

14  Buenaventura. Brian stated that there was a studio for rent, but it was for one person

15  only.

16  39. During a May 10, 2010 vacancy check on the 21910 Western property, HRC staff

17  spoke to a man who identified himself as the manager of 21910 Western, and said his

18  name was "Ben." Upon information and belief, "Ben" is an employee and agent of

19  Defendant La Corona, and is Defendant "Doe III." HRC staff asked Ben if there are any

20  one bedrooms available, and before giving an answer, Ben asked the tester, "It's just you,

21  right?" After the HRC staff member answered "yes", Ben affirmed a vacancy and went

22  on to describe the apartments as "very quiet, orderly and safe." Ben told the caller that

23  the caller would be "impressed by the type of neighbors in the complex."

24  ***Testing***

25  40. HRC routinely employs "testers," trained volunteers who play the role of a person

26  who is looking for a housing unit in which to reside. Testers are given no information

27  about any allegations against property owners. Instead, the testers are instructed to either

28  call or visit a property to view an available dwelling. The testers receive explicit

1  instructions on what information to provide and questions to ask the housing provider.

2  Testers then provide summaries of their interactions with the housing providers to HRC's

3  Director of Investigations.  The Director of Investigations then analyzes the summaries to

4  determine if the tests sustain accusations of discrimination.

5      41.  HRC conducted on-site tests for familial status discrimination at 21240 Western

6  on September 26, 2009 and January 14, 2010.  Both tests consisted of paired testers: a

7  "protected" tester who stated that he or she had a child under the age of 18, and a

8  "control" tester who stated he or she was a member of an adult-only household.

9      42.  On September 26, 2009, the first onsite test was conducted at 21240 Western.

10  Two testers (hereinafter "Tester A" and "Tester B") met with Mr. Ernst, who identified

11  himself as "Allan" and the manager of 21240 Western.  Tester A told Mr. Ernst that she

12  had a 2-year-old daughter, and Tester B told Mr. Ernst that she was going to move in

13  with her 20 year old daughter.

14      43.  Before Tester A (with the 2 year-old) was allowed on the property, Defendant

15  Ernst asked Tester A who would be living in the apartment with her.  Upon being told by

16  Tester A that the apartment would be for herself and her 2 year-old, Mr. Ernst informed

17  her he could not rent her.  Mr. Ernst informed Tester A that "they" [referring to the

18  owner of 21240 Western] had an incident with a child upstairs who fell through the

19  railing and got hurt.  Mr. Ernst also volunteered that insurance would not allow children

20  to live on the second floor, and that the owners of the property had to make the rule that

21  children were not allowed upstairs.  Tester A assured Mr. Ernst that her 2 year-old was

22  well behaved, but Mr. Ernst stated "Sorry, no exceptions."  Mr. Ernst did not allow

23  Tester A onto the property and did not allow Tester A to view the available unit.

24      44.  Less than a half-hour later, Tester B, arrived at 21240 Western and told Mr. Ernst

25  she was looking for a place for herself and her adult daughter.  Mr. Ernst showed Tester

26  B the available unit and surrounding amenities on the property, and gave her a rental

27  application with instructions on how to apply.

28

**COMPLAINT**

45. On January 14, 2010, a second on-site test was conducted at 21240 Western. Both the protected and control tester ("Tester C" and "Tester D" respectively) met with Mr. Ernst. "Tester C," a single male who told Mr. Ernst he had a 4-year-old son was told by Mr. Ernst "the insurance company-the people who insure our building-they may have a problem with a minor living on the second floor. Just because of the stairway and the landing around here. It may not be ideal for a child." Mr. Ernst also asked Tester C "do you have [your son] all the time?" Mr. Ernst also asked Tester C where the 4-year-old would be when Tester C was at work. Mr. Ernst did not volunteer a rental application, and told Tester C the rent was $950 a month.

46. "Tester D," a single male who told Mr. Ernst that he had an 18-year-old adult son, was shown the available unit, the laundry facilities, and the parking garage and told a two-bedroom apartment would be available soon.  Mr. Ernst also mentioned that the unit was "cable ready," and voluntarily handed Tester D a rental application. Finally, Mr. Ernst quoted Tester D a rent of $850 a month, one hundred dollars cheaper than the price quoted to Tester C.

47. HRC also conducted a telephone test on April 30, 2010 at the 1356 Lomita property. Tester E spoke with a man who identified himself as "Brian." Upon information and belief, "Brian" is Defendant Brian Buenaventura. Mr. Buenaventura told Tester E that he had a studio apartment available, but "unfortunately the studio apartment is limited to one person because all utilities are paid. If there is going to be two people, then we offer a one bedroom, but none are available right now."

### V.   INJURY

48. As a result of the Defendants' above-described actions, Plaintiffs Mr. Lee, Mrs. Seo and their child have suffered, are continuing to suffer, and will in the future suffer, irreparable loss and injury, including, but not limited to, loss of their past housing, deprivation of their full use and enjoyment of their past tenancy, violation of the covenant of quiet enjoyment, invasion of the private right of occupancy, violation of

their civil rights, and bodily injury including emotional distress, humiliation, embarrassment, and other special and general damages according to proof.

49. Defendants' discriminatory actions required Plaintiff HRC to divert its scarce resources from its other fair housing activities, and frustrates HRC's mission to eliminate housing discrimination and actively promote fair housing in the city of Torrance and Los Angeles County generally. Defendants' discriminatory actions also deprived Plaintiff HRC, its agents and employees of the statutory right to truthful information about the availability of housing because of familial status. Accordingly, Plaintiff HRC is an "aggrieved party" within the meaning of 42 U.S.C. § 3602(i) and California Gov't Code § 12927(g), and seeks monetary, declaratory, and injunctive relief for housing discrimination by and through this action.

50. The unlawful practices of the Defendants as described above were and are wanton, willful, malicious, fraudulent, and/or oppressive; were intended to cause injury; and/or were done in conscious, callous, reckless, or deliberate disregard for the federally protected rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

51. An actual case or controversy exists between the parties regarding Defendants' duties under federal and state fair housing laws. Accordingly, Plaintiffs are entitled to declaratory relief.

52. Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above. Plaintiffs have no adequate remedy at law. Accordingly, Plaintiffs are entitled to injunctive relief.

## IV.   CLAIMS FOR RELIEF
### First Claim - Fair Housing Act
(By All Plaintiffs Against All Defendants)

53. Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 52 above.

54. Defendants, by and through a pattern or practice of purposeful discrimination on the basis of familial status, have violated the federal Fair Housing Act, 42 U.S.C. §§ 3601, et seq., ("FHA") in that Defendants have injured Plaintiffs by engaging in the following discriminatory housing practices:

      a.    Willfully and knowingly discriminating against individuals on the basis of familial status through refusing to rent to individuals with children in violation of 42 U.S.C. § 3604(a);

      b.    Implementing an overly-restrictive occupancy limit that has an adverse impact on families with children in violation of 42 U.S.C. § 3604(a);

      c.    Otherwise making accommodations unavailable to individuals with children in violation of 42 U.S.C. §3604(a);

      d.    Denying persons equal accommodations, and terms and conditions of tenancy because of familial status in violation of 42 U.S.C. § 3604(b);

      e.    Making written and oral statements of preference, limitation, or discrimination with respect to the rental and use and enjoyment of housing accommodations in violation of 42 U.S.C. § 3604 (c); and

      f.    Making false representations because of a person's familial status about the availability of dwellings in violation of 42 U.S.C. §3604(d).

55. As a direct and proximate result of the acts and omissions herein alleged, Plaintiffs have suffered, and continue to suffer injury.

56. Defendants' conduct constitutes an ongoing and continuous violation of the FHA. Unless enjoined, said conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

57. Pursuant to 42 U.S.C. §3613(c)(1) and (2) Defendants are liable to Plaintiffs for compensatory damages, punitive damages, injunctive relief, and attorneys fees and costs.

**Second Claim – California Fair Employment and Housing Act**

**(By All Plaintiffs Against All Defendants)**

58.  Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 57 above.

59.  Defendants, by and through a pattern or practice of discrimination on the basis of familial status, violated the California Fair Employment and Housing Act, Cal. Gov't Code §12955 et seq., ("FEHA"), by engaging in the following discriminatory housing practices:

    a.    Discriminating against persons because of familial status in violation of Cal. Gov't Code § 12955(a);

    b.    Making, or causing to be made, oral inquiries concerning the familial status of persons seeking to rent or lease housing accommodations, in violation of Cal. Gov't Code  § 12955(b);

    c.    Making statements with respect to the rental of a housing accommodation that indicates preference, limitation, or discrimination based on familial status, or an intention to make that preference, limitation, or discrimination, in violation of Cal. Gov't Code § 12955(c);

    d.    Discriminating against persons on the basis of familial status in violation of Section 51 of the Civ. Code, as that section applies to housing accommodations, in violation of Cal. Gov't Code § 12955(d);

    e.    Aiding, abetting, inciting, compelling, or coercing the doing of any of the unlawful acts or practices prohibited by FEHA, or attempted to do so, in violation of Cal. Gov't Code § 12955(g);

    f.    Otherwise making unavailable or denying a dwelling based on discrimination because of familial status, in violation of Cal. Gov't Code § 12955(k); and

g.   Implementing and enforcing a policy or practice that has a discriminatory effect on families with children in violation of Cal. Gov't Code § 12955.8.

60.  As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer injury.

61.  Defendants' conduct constitutes an ongoing and continuous violation of the FEHA.  Unless enjoined, said conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

62.  Pursuant to Cal. Gov't Code § 12989.2, Plaintiffs are entitled to injunctive relief, compensatory damages, punitive damages, attorneys' fees and costs.

**Third Claim-Unruh Civil Rights Act**
**(By Plaintiffs Mr. Lee and Mrs. Seo against Defendants Sonlight Management, Inc., La Corona, Bonnie Corona, Steve Corona and Allan Ernst)**

63.  Plaintiffs hereby reallege and incorporate paragraphs 1 through 62 as if fully set forth herein.

64.  Defendants Sonlight, La Corona, Ms. Corona, Steve Corona and Mr. Ernst injured Plaintiffs Mr. Lee and Mrs. Seo in violation of the Unruh Civil Rights Act, Cal. Civ. Code §51 et seq. ("Unruh Act") by discriminating against them on the basis of their familial status.

65.  Pursuant to the Unruh Act, Mr. Lee and Mrs. Seo are entitled to statutory damages of up to three times their actual damages as determined by the trier of fact, but no less than $4,000 for each violation.

66.  The violations of the Unruh Act committed by Sonlight, La Corona, Ms. Corona, Steve Corona and Mr. Ernst have been intentional and malicious, thereby entitling Mr.

1   Lee and Mrs. Seo to punitive damages in an amount to be determined at trial, but which

2   amount is within the jurisdictional requirements of this Court.

3

4   67. Plaintiffs Mr. Lee and Mrs. Seo are also entitled to an order awarding reasonable

5   attorneys' fees and costs.

6   68. Defendants Sonlight, La Corona, Ms. Corona, Steve Corona and Mr. Ernst acted

7   and are acting with malice and oppression.   Defendants Sonlight, La Corona, Ms.

8   Corona, Steve Corona and Mr. Ernst are motivated by an evil intent to discriminate,

9   and/or show a reckless and callous indifference to the protected rights of Mr. Lee and

10  Mrs. Seo.   Therefore, punitive damages should be awarded to Mr. Lee and Mrs. Seo

11  pursuant to Cal. Civ. Code § 3294.

12

13              **Fourth Claim - California Unfair Business Practices Act**

14  **(By All Plaintiffs Against Defendants Corona Living Trust, Sonlight Management,**

15  **Inc., La Corona, Lisa Apartments, Arthur Corona, Steve Corona and Bonnie**
    **Corona)**

16

17  69. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 68 of the

18  Complaint herein.

19  70. In acting as herein alleged, Defendants Corona Living Trust, Sonlight, La

20  Corona, Lisa Apartments, Arthur Corona, Steve Corona and Bonnie Corona have failed

21  to comply with applicable laws including the FHA, the FEHA and the Unruh Act.

22  Accordingly,  Defendants Corona Living Trust, Sonlight, La Corona, Lisa Apartments,

23  Arthur Corona, Steve Corona and Bonnie Corona have engaged in acts of unfair

24  competition as proscribed by Cal. Bus. & Prof. Code §17200, et seq.  By bringing this

25  action, Plaintiffs are acting in the interest of themselves and the general public,

26  pursuant to Cal. Bus. & Prof. Code §17204.

27  71. Plaintiffs and the general public, have suffered, and continue to suffer,

28  irreparable harm due to the discriminatory policies and practices of Defendants Corona

Living Trust, Sonlight, La Corona, Lisa Apartments, Arthur Corona, Steve Corona and
Bonnie Corona and these Defendants' continuing and conscious disregard of the fair
housing rights of families with children.

72. Pursuant to Cal. Bus. & Prof. Code §17203, Plaintiffs seek to enjoin Defendants
Corona Living Trust, Sonlight, La Corona, Lisa Apartments, Arthur Corona, Steve
Corona and Bonnie Corona from their continuing commission of the acts alleged above,
which if not enjoined will continue to irreparably harm Plaintiffs and the citizens of the
State of California, harm for which there is no plain, speedy or adequate remedy at law.

### Fifth Claim – Negligence
**(By Plaintiffs Mr. Lee and Mrs. Seo Against Defendants Sonlight Management, Inc.,
La Corona, Bonnie Corona, Steve Corona and Allan Ernst)
(By Plaintiff HRC Against All Defendants)**

73. Plaintiffs incorporate by reference each and every allegation contained in
paragraphs 1 through 72 above, as though fully set forth herein.

74. Defendants owed, and continue to owe Plaintiffs a duty to operate the Subject
Properties in a manner that is free from unlawful discrimination and to employ, train, and
supervise their directors, employees, managers, agents, and themselves to fulfill that
duty. Defendants breached that duty by engaging in a pattern and practice of
discrimination against families with children as herein alleged.

75. Defendants' negligence includes but is not limited to:

    A. Defendants' negligent failure to supervise themselves regarding
        compliance with the requirements of federal and state fair housing
        laws; and

    B. Defendants' negligent failure to operate the Subject Properties in
        conformity with accepted industry custom and standards.

76. As a result of Defendants' negligence, Mr. Lee, Mrs. Seo, and their minor child have been injured.

77. As a result of Defendants' negligence, HRC was forced to divert its scarce resources, and experienced a frustration of its mission to eliminate discrimination in housing.

**Sixth Claim - Declaratory Relief**

**(By Plaintiffs Mr. Lee and Mrs. Seo Against Defendants Sonlight Management, Inc., La Corona, Bonnie Corona, Steve Corona and Allan Ernst) (By Plaintiff HRC Against All Defendants)**

78. Plaintiffs herein re-allege and incorporate by reference paragraphs 1 through 77 of this complaint.

79. In acting as herein alleged, Defendants have failed to comply with the above-referenced laws which prohibit housing providers, like Defendants, from discriminating against families with children.

80. These laws also require housing providers, like Defendants, to provide full and equal access to housing accommodations, and to refrain from unlawful discrimination on the basis of familial status.

81. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

**VII.   PRAYER FOR RELIEF**

Plaintiffs pray this Court enter judgment as follows:

1.      Declare that the discriminatory practices of the Defendants as set forth above, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601, et seq., the California Fair Employment and Housing Act, Cal. Gov't Code § 12955, et seq., the Unruh Act, Cal. Civ. Code §51, et seq. and the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200, et seq.

2.      Enjoin Defendants, their agents, employees, successors, and all other

**COMPLAINT**

1  persons in active concert or participation with any of the Defendants, from discriminating
2  on the basis of familial status.

3       3.      For temporary, preliminary and permanent injunctive relief enjoining
4  Defendants from discriminating against prospective renters and in-place tenants.

5       4.      Order all Defendants, as well as all employees and agents of Defendants, to
6  engage in comprehensive fair housing training.

7       5.      Order Defendants to submit to monitoring of their practices and records in
8  order to ensure compliance with the fair housing laws.

9       6.      Award compensatory damages to Plaintiffs.

10      7.      Award punitive damages to Plaintiffs.

11      8.      Award any other such damages as may be allowed under all the above
12  federal and state laws.

13      9.      Award Plaintiffs their reasonable attorneys' fees and costs.

14      10.     Additional and further relief which the Court deems just and proper.

15

16

17  Dated: June 9, 2010                              Respectfully Submitted,

18

19

20  _____
    ANNETTE MORASCH
21  Attorney for Plaintiffs

22

23

24

25

26

27

28

---

EXHIBIT A

## IMPORTANT INFORMATION FOR ALL NEW TENANTS!!!!!

Move-in time: 8:00 a.m. to 9:00 p.m.
Move-out time: 8:00 a.m. to 9:00 p.m.

All moving boxes and large items need to be broken down before putting them in the dumpsters. Trash collectors will not take anything outside the dumpster.

When having friends and family members helping to move you, please be quiet, no children under 10 . Please consider the people that already live here, they do not wish to hear you.

Thank you very much for choosing Corona Del *Morete* Apartments.

Manager,   *Allan Ernst*

# EXHIBIT B

## HOUSE RULES

We hope you will enjoy living here and that you will find these rules beneficial to all concerned. In apartment buildings, your activities will more directly affect your neighbors than in individual housing. For this reason we ask that you exercise a greater degree of care in conducting your daily activities.

OCCUPANTS: are restricted to those signed on the rental agreement, ONLY. No pets or animals of any kind are permitted to occupy the premises. No minor children are allowed outside the apartment unless they are accompanied by an adult tenant. No skate, stakeboards, tricycles, bicycles or wheels goods of any kink are permitted on the decks, stairs, balconies, walkways or parking areas. Toys or wheels goods must be kept inside your apartment and carried outside the complex before use.

YOU ARE RESPONSIBLE FOR THE BEHAVIOR AND ACTIONS OF ANY GUEST YOU MAY HAVE. Boisterous activities, profanity, unnecessarily loud noise due to talking, musical instruments, radios, records, tv, tapes, etc will not be permitted. TENANTS are requested to be particularly careful about noise before 9:00am and after 10:00pm. Unnecessary loitering around the entrances, courtyards, decks or stairs is not permitted by tenants or their guests. No signs or advertising are to be affixed to any part of the premises. Personal items such as mops, brooms, plants, shoes,etc. must be kept inside your apartment. Nothing is to be hung from balconies, rails, etc.

AUTOMOBLIES MUST BE PARKED IN ASSIGNED SPACES. There is NO guest parking. All guests must park outside. There is no car washing, oil changing or mechanical repairs of any kind on the premises. All vehicles must be parked head-in. All vehicles must be in operating condition and currently registered (to tenant). If your vehicle leaks oil, transmission fluid, grease of any kind...it must be kept outside the parking area until the problem is corrected. You are responsible for cleaning your parking space(s) and you will be charged for the expense of cleaning if you fail to take care of it yourself. Because of fire danger.....NO storage anywhere except in assigned storage lockers.

All refuse shall be placed in the proper container provided outside the building. No wastebaskets, trash, rags, newspapers, bottles, cans may be placed on the balconies, walkways, outside your door or in front/behind your automobile. All garbage MUST be bagged before being put in the trash bins and all large items must be broken down FLAT to fit in the bin. Nothing may be placed next to the bin ALL TRASH MUST FIT IN THE BIN.

Every effort has been made to place your apartment in good condition. Please notify your manager immediately if there are problems. You will be charged for any and all damage to the apartment, appliances, etc., over and above normal wear and tear. Tenant is responsible for leaving the apartment in clean move-in condition at the termination of the tenancy. A reminder, a 'THIRTY DAY' written notice of your intent to move is required.

DO NOT alter your apartment in any fashion. The following are considered alterations, installing of any antenna, boring, marring or puncturing any part of the equipment, furnishings, fixtures, walls or ceilings, changing locks, adding locks, re-decorating (such as painting or papering, replacing of any part of the fixtures or furnishings). TENANT WILL BE RESPONSIBLE FOR RESTORING PREMISES TO ITS ORIGINAL CONDITION(WHERE ANY ALTERATIONS HAVE BEEN MADE).

Laundry room hours and rules are posted in each laundry facility....:...READ and FOLLOW them. Tenants are responsible for cleaning the lint filters in the dryers after each use along with wiping out the washers of any excess debris. DO NOT overload the machines, or you will be held responsible for the repairs and your laundry room privileges will be revoked!

The management reserves the right to enter ANY apartment at any time in case of an emergency. PLEASE PROVIDE YOUR MANAGER WITH A CURRENT TELEPHONE NUMBER SO THAT IF THERE IS ANY EMERGENCY OR A NEED TO CONTACT YOU, YOUR MANAGER CAN GET IN TOUCH WITH YOU, DAY OR NIGHT!!!!!  Your manager has hours posted, however feel free to call any time in case of an emergency.

The owner provides insurance for the building ONLY..tenants are advised to carry apartment insurance for their own personal property, consult your agent.

Thank you,                        Date ___12/07___ ,___
Sonlight Management        Tenant _____
                                   Tenant _____

EXHIBIT C

## RESIDENTIAL RENTAL AGREEMENT
## &
## VERIFICATION OF SECURITY DEPOSIT

THIS RENTAL AGREEMENT evidences the terms under which the parties whose signatures appear below and are identified as Landlord and Tenant, respectively, do hereby agree on the part of the Landlord to rent to Tenant, and on the part of the Tenant to rent from the Landlord, the premises herein described under the following terms and conditions:

1.   PREMISES: Apartment Number___*25*___located at *2140 S. WESTERN AVE* in the city of *TORRANCE* State of California. Assigned Parking#___*32*___Assigned Storage #___*19*___.

2.   TERMS AND RENTAL: The term of this rental agreement shall commence at 12:01 A.M. on the First day of *DECEMBER 2007* and shall be for a tenancy from month-to-month at the rental of *EIGHT HUNDRED TWENTY* DOLLARS ($ *825.00* )per month payable IN ADVANCE on or before the FIRST day of each month at the office or *FIVE* apartment of the manager of the building. ALL checks shall be made payable to the building name, under no circumstances will second party be accepted.

3.   VERIFICATION OF TOTAL SECURITY DEPOSIT *825.00* THIS DEPOSIT IS FOR SECURITY ONLY AND IS NOT TO BE USED AS OR FOR RENT. Any refund of such security to Tenant shall be made in the amount and manner established by law, namely Section 1950.5 of the California Civil Code. Tenant is to pay when due any utility or other charge accruing in connection with the use of the premises except for the following, which are to be paid by Landlord: *CAL WATER*. A late fee of $50.00 shall be added to any payment of rent made three days or more after the due date or when a check has been given for rent payment and returned by the bank for any reason not the fault of the Landlord.   *$ 75.00*

4.   OCCUPANTS: Regular occupants of the premises shall be restricted to those parties who have signed this agreement. The stay of any person shall not exceed FIVE days in total (within a 30 day period), without the written authorization of the Landlord or his agent. Tenant shall pay additional rent for the period of stay for each unauthorized occupant at a rate of $100.00 per month. Acceptance of such additional rent shall not constitute a waiver of the Landlord's right to limit the number of occupants. The number of occupants for this apartment will be limited to: *TWO* persons. *(2)*

5.   CONDITION OF PREMISES:  By executing this agreement, Tenant acknowledges that he has received the premises and any appliances, furniture, furnishings or other contents as may be provided therewith, including but not restricted to those items listed on the inventory and finds them to be in good and clean condition and repair except as may be indicated elsewhere in this agreement. Tenant agrees to care for the premises and its contents, to commit no waste on or about the premises, and at the termination of this agreement to return the premises and its contents clean and free from trash and in the same condition as when received except for such ordinary wear and tear as reasonable and careful use would have caused. Any cost incurred by the Landlord to restore the premises and its contents to rentable condition (including any unpaid rent and damages) shall be withheld from the security deposit referred to above and refund shall be made in the amount and manner established by law, namely Section 1950.5 of the California Civil Code.

6.   USE OF PREMISES: a. NOISE-UNLAWFUL ACTIVITIES-Tenant or his guests shall not disturb, annoy, endanger or inconvenience other tenants of the building or neighbors, nor use the premises for any unlawful purposes, nor violate any law or ordinance, not commit waste or nuisance upon or about the premises. Tenant agrees not to use the premises for any commercial enterprise. b. ANIMALS-No animal, bird or pet of any kind, or aquarium may be kept on or about the premises. c. ALTERATIONS-No change of locks, installation of aerials, lighting fixtures or other equipment, use of nails, screws or fastening devices on walls, ceiling or woodwork, or alteration or redecoration of the premeise shall be made without prior written authorization of the Landlord or his agent. d. CLEANING AND REFUSE-Tenant shall keep the premises, its equipment and contents in reasonable clean and neat condition at all times. All refuse and garbage shall be deposited by Tenant in the receptacles provided. Tenant shall be responsible for disposing of articles of a size or nature not acceptable by the rubbish hauler for the building. e. MECHANICAL EQUIPMENT-Automobiles, motorcycles or other equipment may be parked only in such space as may be assigned to Tenant and may not be washed or disassembled on or near the general premises; no oil changing is permitted on the premises. All vehicles must be in operating condition at all times and currently registered. Tenant is responsible for keeping parking space free from oil, leaks, etc. caused by Tenant's vehicle. Assigned parking is for Tenants ONLY, no guest parking. f. LOITERING-Lounging or unnecessary loitering on the front steps, public balconies or in the halls or courtyard that interferes with convenience of the other tenants is prohibited. g. HOUSE, POOL AND LAUNDRY RULES-Tenant shall comply with such house, pool or laundry rules as may be distributed or posted from time to time on the general premises. Use of the pool area, if any, or laundry room are conditioned upon Tenant's care and consideration and can be revoked by Landlord at any time for any reason without reduction of the above stated rent. h. FURNISHINGS-No liquid filled furniture of any kind may be kept on the premises. Tenant shall not install or use any washer, dryer, dishwasher, refrigerator, freezer or air conditioner that was not already installed

In the amount and manner established by law, namely Section 1950.5 of the California Civil Code.

6.    USE OF PREMISES:  a. NOISE-UNLAWFUL ACTIVITIES-Tenant or his guests shall not disturb, annoy, endanger or inconvenience other tenants of the building or neighbors, nor use the premises for any unlawful purposes, nor violate any law or ordinance, not commit waste or nuisance upon or about the premises. Tenant agrees not to use the premises for any commercial enterprise.  b. ANIMALS-No animal, bird or pet of any kind, or aquarium may be kept on or about the premises.  c. ALTERATIONS-No change of locks, installation of aerials, lighting fixtures or other equipment, use of nails, screws or fastening devices on walls, ceiling or woodwork, or alteration or redecoration of the premise shall be made without prior written authorization of the Landlord or his agent.  d. CLEANING AND REFUSE-Tenant shall keep the premises, its equipment and contents in reasonable clean and neat condition at all times. All refuse and garbage shall be deposited by Tenant in the receptacles provided. Tenant shall be responsible for disposing of articles of a size or nature not acceptable by the the rubbish hauler for the building.  e. MECHANICAL EQUIPMENT-Automobiles, motorcycles or other equipment may be parked only in such space as may be assigned to Tenant and may not be washed or disassembled on or near the general premises; no oil changing is permitted on the premises. All vehicles must be in operating condition at all times and currently registered. Tenant is responsible for keeping parking space free from oil, leaks, etc. caused by Tenant's vehicle. Assigned parking is for Tenants ONLY, no guest parking.  f. LOITERING-Lounging or unnecessary loitering on the front steps, public balconies or in the halls or courtyard that interferes with convenience of the other tenants is prohibited.  g. HOUSE, POOL AND LAUNDRY RULES-Tenant shall comply with such house, pool or laundry rules as may be distributed or posted from time to time on the general premises. Use of the pool area, if any, or laundry room are conditioned upon Tenant's care and consideration and can be revoked by Landlord at any time for any reason without reduc tion of the above stated rent.  h. FURNISHINGS-No liquid filled furniture of any kind may be kept on the premises. Tenant shall not install or use any washer, dryer, dishwasher, refrigerator, freezer or air conditioner that was not already furnished with the unit.

7.    DAMAGE: Tenant shall promptly pay for any damage to the apartment or other residence, general premises, contents, furnishings and equipment thereof which may be caused by Tenant, his guest or occupants. Drains and waste pipes are acknowledged to have been clear at commencement of this agreement unless reported otherwise to Landlord within one week therefrom. The cost of clearing any partial or complete stoppage occuring during the term of this agreement shall be paid by Tenant.

8.    ABANDOMENT OR ASSIGNMENT: Tenant agrees that he will occupy the premises continuously and that any unexplained absence from the premises under the terms and length of time set forth in the laws of California (California Civil Code Section 1951.3 as same may be amended from time to time) shall constitute abandomment of the premises. Any personal propery left on the premises so abandoned may be disposed of by Landlord in the manner set forth in laws of California (see California Civil Code 1980-91 and California Code of Civil Procedure 1174 as same may be amended from time to time.) Tenant agrees not to transfer, assign or sublet the premises or any part thereof and hereby authorizes Landlord as his Agent to evict any person claiming possession by way of assignment or subletting under his authority or his agreement.

9. ATTORNEY FEES AND COSTS: The prevailing party may recover from the other party his costs and attorney fees of any action brought by either party to enforce any terms of this agreement or recover possession of the premises.

10. RENEWAL OR TERMINATION: a. AUTOMATIC RENEWAL-This agreement is automatically renewed from month-to-month but may be terminated at any time br either party giving to the other in writing 30 days prior notice of intention to terminate. b. HOLDING OVER-It is understood that fulfillment of the requirements of such notice of termination on or before the termination date is essential to permit Landlord to re-rent the premises or prepare for re-rental on a definite date and should tenant hold over the premises beyond the termination date, tenant is liable for all additional rent and damages due under the law. c. TERMINATION PROCEDURE-Upon termination(1)Tenant shall completely vacate the premises, including any storage or other areas of the general premises which he may be occupying: (2)Tenant shall also deliver all keys, personal property listed on the inventory and all personal property furnished for Tenant's use during the term of this agreement, whether or not listed on the inventory, to Landlord in good, clean and sanitary condition, reasonable wear and tear excepted. TENANTS ARE CONSIDERED IN POSSESSION OF SUBJECT PREMISES UNTIL THE ABOVE CONDITIONS HAVE BEEN MET. (3)Before departure, Tenant shall leave his forwarding address so that Landlord may make any notification and/or refund as required by law, namely, Section 1950.5 of the California Civil Code. NO POST OFFICE BOXES ARE ACCEPTABLE AS FORWARDING ADDRESSES.

11. INSURANCE IS CARRIED BY THE OWNER FOR HIS OWN PROTECTION ONLY; TENANT UNDERSTANDS THAT HE IS RESPONSIBLE FOR HIS OWN INSURANCE, fire or other kind of coverage. Tenant may maintain a personal property insurance policy to cover any losses sustained to Tenants personal property or vehicle. It is acknowledged that Landlord does not maintain this insurance to cover personal property damage or loss caused by fire, theft, rain, water over-flow/leakage, acts of GOD, or any other causes. It is acknowledged that Landlord is not liable for these occurances. It is acknowledged that Tenant's insurance policy shall solely indemnify Tenant for any losses sustained. Tenant's failure to maintain said policy shall be a complete waiver of Tenant's right to seek damages against Landlord for the above stated losses. The parties acknowledge that the premises are not to be considered a security building which would hold Landlord to a higher degree of care.

12. JOINT AND SEVERAL AGREEMENT: The Tenants, by executing the Rent Agreement and taking possession the subject premises, agree that each of the Tenants and signators is and shall to be the agent of the other tenants and to accept service of Summons or other Notice for and on behalf of the other tenants and signators to this agreement.

13. Whenever this agreement is signed by, or whenever a tenant pays the rent to, a property manager, a management company or other agent of the the owner, such person or persons shall be considered as Landlord of the premises, and shall be authorized to prosecute Unlawful Detainer actions in said property manager's name or said property management company's name or said other agent's name as authorized by Section 369 od Code of Civil Procedure of California without joining the title owner as a plaintiff.

14. LEAD WARNING STATEMENT: Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips and dust pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Landlord must disclose the presence of known lead-based paint and/or lead based paint hazards in the dwelling. Tenants must also receive a federally approved pamphlet on lead poisoning prevention. Landlord has no knowledge of lead-based paint and /or lead-based paint hazards in the premises. Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the premises. Tenant has received the pamphlet "Protect Your Family From Lead In Your Home", to read.

15. NOTICES: All notices to the Tenant shall be deemed served upon mailing by first class mail, addressed to the Tenant, at the subject premises or upon personal delivery to the premises whether or not the TENANT is actually present at the time of said delivery. All notices to the Landlord shall be served by mailing first class mail or by personal delivery to the manager.

16. LANDLORD'S RIGHT OF ENTRY: Landlord may enter and inspect the premises during normal business hours and upon reasonable advance notice of at least 24 hours to Tenant. Landlord is permitted to make all alterations, repairs and maintenance that in Landlord's judgement is necessary to perform. In addition Landlord has all right to enter pursuant to Civil Code Section 1954. If the work performed required that Tenant temporarily vacate the unit, then Tenant shall vacate for this temporary period upon being served a 7 day notice by Landlord. Tenant agrees that in such event that Tenant will be solely compensated by a corresponding reduction in rent for those many days that Tenant was temporarily displaced. No other compensation shall be afforded to the Tenant. If the work to be performed requires the cooperation of Tenant to perform certain tasks, then those tasks shall be performed upon serving 24 hours written notice by Landlord.

17. REPAIRS BY LANDLORD: Where a repair is the responsibility of the Landlord, Tenant must notify Landlord with a written notice stating what item need repair and a written permission to

pregnant women. Before renting ( , 1978 housing, Landlord must disclose t. presence of known lead-based paint and/or lead based paint hazards in( ) dwelling. Tenants must also receive a ) derally approved pamphlet on lead poisoning prevention. Landlord has no knowledge of lead-based paint and /or lead-based paint hazards in the premises. Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the premises. Tenant has received the pamphlet "Protect Your Family From Lead In Your Home", to read.

15.    NOTICES: All notices to the Tenant shall be deemed served upon mailing by first class mail, addressed to the Tenant, at the subject premises or upon personal delivery to the premises whether or not the TENANT is actually present at the time of said delivery. All notices to the Landlord shall be served by mailing first class mail or by personal delivery to the manager.

16.    LANDLORD'S RIGHT OF ENTRY:  Landlord may enter and inspect the premises during normal business hours and upon reasonable advance notice of at least 24 hours to Tenant. Landlord is permitted to make all alterations, repairs and maintenance that in Landlord's judgement is necessary to perform. In addition Landlord has all right to enter pursuant to Civil Code Section 1954. If the work performed required that Tenant temporarily vacate the unit, then Tenant shall vacate for this temporary period upon being served a 7 day  notice by  Landlord. Tenant agrees that in such event that Tenant will be solely compensated by a corresponding reduction in rent for those many days that Tenant was temporarily displaced.  No other compensation shall be afforded to the Tenant.  If the work to be performed requires the cooperation of Tenant to perform certain tasks, then those tasks shall be performed upon serving 24 hours written notice by Landlord.

17.    REPAIRS BY LANDLORD:  Where a repair is the responsibility of the Landlord, Tenant must notify Landlord with a written notice stating what item need  repair and a written permission to enter. Tenant must give Landlord a reasonable opportunity to  repair said item.   Under no circumstances my Tenant withold rent unless said item constitutes a substantial breach of the warrantee of habitability as stated in Code of Civil Procedure Section 1174.2

OWNER OF THE BUILDING IN THIS AGREEMENT IS BONNIE L. CORONA whose mailing address is Post Office Box 1596 Lomita, California, 90717.

IN WITNESS WHEREOF THE PARTIES HAVE SET THEIR HANDS AND SEALS ON THIS ___ *FIRST*
DAY OF  *DECEMBER  2007*

LANDLORD _____          TENANT_____

                                                                     TENANT_____

Revision  1/2004

BUILDING *LA CORONA DEL NORTE*

AGREEMENT REGARDING KEY FOR ENTRY AND GATE CONTROL FOR PARKING

The undersigned acknowledges receipt of Entry key *TWO* Gate *ONE* Apartment key *TWO*
Mailbox key *ONE* on this date *12/07*

It is agreed by tenant and owner of the above named building that should the keys or gate control issued to the undersigned in connection with the tenancy at said building get into unauthorized hands that the security of the building and the parking area will be destroyed, making the locks and gate controls of no value.

Therefore, tenant covenants to keep the keys and gate control in their possession at all times, NEVER to be left in the car. In the event TENANT allows the keys or gate control to get into unauthorized hands or otherwise compromises security to the building and/or parking area, the TENANT agrees to reimburse the owner for any expenses necessary to reestablish the building/parking security and for any other loss or damages that might result thereof.

The TENANT assures OWNER that he will not permit anyone or conspire with anyone to alter or duplicate the keys or gate control.

The tenant further agrees to reimburse the owner in the event owner incurs any expense in his effort to recover or repossess the keys and gate control. If the owner commences and legal proceedings against the tenant to recover the keys and gate control, the tenant agrees to pay all such costs incurred by the owner or his assigns together with reasonable attorney's fee for the owner to be fixed by the court having jurisdiction over such proceedings.

Tenant agrees that he will be responsible for any damage caused by his vehicle in the parking area of the above building or accesses thereto: that he will park only in the space(s) assigned to him and will observe the speed limit of 5 miles per hour when inside the parking area. ABSOLUTELY no guest parking.

Tenant further agrees that there will be no mechanical work performed on vehicles, no oil changing, car washing in the parking area. All vehicles MUST be operable and have current registration.

Date *12/1/07*

Tenant _____        Tenant _____

Manager/Owner _____

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV10- 4262 PSG (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [_] Southern Division | [_] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

ANNETTE MORASCH (State Bar No. 263797)
amorasch@hrc-la.org
Southern California
Housing Rights Center, Inc.
520 S. Virgil Ave., Suite 400
Los Angeles, CA 90020

ORIGINAL

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HO JIN "STEVEN" LEE, an individual; (See attachment for additional parties)<br><br>PLAINTIFF(S)<br><br>v.<br><br>CORONA LIVING TRUST; SONLIGHT MANAGEMENT, INC., a California Corporation; (See attachment for additional parties)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV10-4262** PSG PJWx<br><br>**SUMMONS** |

TO:    DEFENDANT(S):  <u>CORONA LIVING TRUST; ET AL.,</u>

     A lawsuit has been filed against you.

     Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>Annette Morasch</u>, whose address is <u>520 S. Virgil Ave., Suite 400,  Los Angeles, CA 90020</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __JUN - 9 2010__

By: _Natalie Gorgonio_
       Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

ORIGINAL

## ATTACHMENT A

**Plaintiffs, cont.**

EUNRAN "REBEKAH" SEO, an individual; and SOUTHERN CALIFORNIA HOUSING RIGHTS CENTER, d/b/a HOUSING RIGHTS CENTER, a California nonprofit corporation,

**Defendants, cont.**

LISA APARTMENTS, an unincorporated California association; LA CORONA TORRANCE APARTMENTS, an unincorporated California association d/b/a LA CORONA DEL NORTE APARTMENTS d/b/a CORONA DEL NORTE APARTMENTS d/b/a LA CORONA DEL NORTE; BONNIE L. CORONA, individually and as a owner of Sonlight Management, Inc., as a trustee of Corona Living Trust, as an owner/partner of Lisa Apartments and as owner/partner of La Corona Torrance Apartments; ARTHUR CORONA individually and as a trustee of Corona Living Trust; STEVE A. CORONA, individually and as a president of Sonlight Management, Inc., as owner/partner of La Corona Torrance Apartments and as owner/partner of Lisa Apartments;  ALLAN ERNST, individually and as managing agent of Sonlight Management, Inc.; BRIAN BUENAVENTURA, individually and as managing agent of Lisa Apartments; and DOES I – X, inclusive.

ANNETTE MORASCH (State Bar No. 263797)
amorasch@hrc-la.org
Southern California
Housing Rights Center, Inc.
520 S. Virgil Ave., Suite 400
Los Angeles, CA 90020

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HO JIN "STEVEN" LEE, an individual; (See attachment for additional parties) | **CASE NUMBER** |
| PLAINTIFF(S) | CV10-4262 PSG PJWx |
| v. | |
| CORONA LIVING TRUST; SONLIGHT MANAGEMENT, INC., a California Corporation; (See attachment for additional parties) | **SUMMONS** |
| DEFENDANT(S). | |

TO:   DEFENDANT(S):   CORONA LIVING TRUST; ET AL.,

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Annette Morasch_____, whose address is _520 S. Virgil Ave., Suite 400,  Los Angeles, CA 90020_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ **JUN - 9 2010** _____

By: _____ **NATALIE LONGORIA** _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

1198

## ATTACHMENT A

**Plaintiffs, cont.**

EUNRAN "REBEKAH" SEO, an individual; and SOUTHERN CALIFORNIA HOUSING RIGHTS CENTER, d/b/a HOUSING RIGHTS CENTER, a California nonprofit corporation,

**Defendants, cont.**

LISA APARTMENTS, an unincorporated California association; LA CORONA TORRANCE APARTMENTS, an unincorporated California association d/b/a LA CORONA DEL NORTE APARTMENTS d/b/a CORONA DEL NORTE APARTMENTS d/b/a LA CORONA DEL NORTE; BONNIE L. CORONA, individually and as a owner of Sonlight Management, Inc., as a trustee of Corona Living Trust, as an owner/partner of Lisa Apartments and as owner/partner of La Corona Torrance Apartments; ARTHUR CORONA individually and as a trustee of Corona Living Trust; STEVE A. CORONA, individually and as a president of Sonlight Management, Inc., as owner/partner of La Corona Torrance Apartments and as owner/partner of Lisa Apartments;  ALLAN ERNST, individually and as managing agent of Sonlight Management, Inc.; BRIAN BUENAVENTURA, individually and as managing agent of Lisa Apartments; and DOES I – X, inclusive.

COPY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
HO JIN "STEVEN" LEE, an individual;  (See attachment for additional parties)

**DEFENDANTS**
CORONA LIVING TRUST; SONLIGHT MANAGEMENT, INC., a California Corporation; (See attachment for additional parties)

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Annette Morasch HOUSING RIGHTS CENTER
520 S. Virgil Avenue, Suite 400, Los Angeles, CA 90020
213-387-8400

**Attorneys (If Known)**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
This action seeks relief against defendant based on their unlawful discrimination based on Familial Status under the Fair Housing Act of 1968 42 U.S.C. 3601-3619

**VII. NATURE OF SUIT** (Place an X in one box only.)

CV10-4262

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | N/A |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | N/A |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | N/A |

***** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  June,08, 2010

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## ATTACHMENT A

**Plaintiffs, cont.**

**EUNRAN "REBEKAH" SEO, an individual; and SOUTHERN CALIFORNIA HOUSING RIGHTS CENTER, d/b/a HOUSING RIGHTS CENTER, a California nonprofit corporation,**

**Defendants, cont.**

**LISA APARTMENTS, an unincorporated California association; LA CORONA TORRANCE APARTMENTS, an unincorporated California association d/b/a LA CORONA DEL NORTE APARTMENTS d/b/a CORONA DEL NORTE APARTMENTS d/b/a LA CORONA DEL NORTE; BONNIE L. CORONA, individually and as a owner of Sonlight Management, Inc., as a trustee of Corona Living Trust, as an owner/partner of Lisa Apartments and as owner/partner of La Corona Torrance Apartments; ARTHUR CORONA individually and as a trustee of Corona Living Trust; STEVE A. CORONA, individually and as a president of Sonlight Management, Inc., as owner/partner of La Corona Torrance Apartments and as owner/partner of Lisa Apartments;  ALLAN ERNST, individually and as managing agent of Sonlight Management, Inc.; BRIAN BUENAVENTURA, individually and as managing agent of Lisa Apartments; and DOES I – X, inclusive.**